IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America ) | CR. No. 6:23-cr-00278-DCC-1 |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Candy Kern ) | |
| ) | |
| _____ ) | |

This matter is before the Court on Defendant's Pro Se Motion to Make Certain Credits for Restitution Already Paid, to Determine Restitution and Forfeiture as Satisfied, and/or, in the Alternative, to Suspend Individual Payments to Be Made by [Defendant] Until After She Starts Receiving Income.  ECF No. 43.  The Government filed a Response in Opposition, and Defendant filed a Reply.  ECF Nos. 49, 53.

On May 1, 2023, Defendant pled guilty to conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 371, 1341, and 1343.  ECF Nos. 1 at 1–2; 11, 12.  On August 21, 2023, Defendant was sentenced to probation for five years, with the first 500 days of supervision on home detention with GPS monitoring.  ECF Nos. 32, 33.  Defendant's sentence also included restitution to be paid in the amount of $1,442,401.56.  ECF No. 33 at 4.  On March 4, 2024, Defendant filed the present Motion seeking that the $764,793.10 held in the Upstate Law Group, LLC's[1] ("Upstate Law Group") various Interest on Lawyer Trust Accounts ("IOLTA") accounts be credited towards her restitution payment and that the $725,000.00 paid to the Consumer Financial Protection Bureau

---

[1] As indicated in the Presentence Investigation Report ("PSR"), Defendant "was the managing partner of Upstate Law Group, LLC . . . from 2012 until 2021[.]"  ECF No. 26 at 42.

("CFPB") in the related civil case[2] also be credited towards her restitution payment. ECF No. 43 at 2. On March 27, 2024, the Court entered a Text Order that granted Defendant's Motion as related to her request concerning the money held in the IOLTA accounts but reserved judgment as to her request that the $725,000.00 paid to the CFPB be credited against her restitution obligation. ECF No. 50. Accordingly, the remaining portion of Defendant's Motion is now before the Court.

## APPLICABLE LAW

"[F]ederal courts do not have inherent authority to order restitution, but must rely on a statutory source." *United States v. Cohen*, 459 U.S. F3d 490, 498 (4th Cir. 2006) (citing *United States v. Broughton-Jones*, 71 F.3d 1143, 1149 (4th Cir. 1995)). In the present case, the Mandatory Victim's Restitution Act ("MVRA") provides such authority. 18 U.S.C. § 3663A. Under the MVRA, a district court "shall order . . . that the defendant make restitution to the victim of the offense" upon conviction of "an offense against property . . . including any offense committed by fraud or deceit[.]" 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(i)–(ii). In addition, the victim must be identifiable and have "suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B).

## DISCUSSION

Defendant requests that the $725,000.00 wired to the CFPB to be distributed to "affected consumers" per the Consent Order filed in the related civil case be credited towards her restitution payment in the present case. ECF No. 43 at 2–3. Defendant argues that such credit is appropriate because the allegations in the related civil case and

---

[2] *See Bureau of Consumer Fin. Prot. v. Kern*, C.A. No. 6:20-cv-00786-DCC, ECF No. 52 at 7 (D.S.C. Jan. 21, 2021).

in the present case allegedly mirror each other and because the "affected consumers" in the related civil case "are the same pool of victims" in the present case. *Id.*

In contrast, the Government contends that the victims in the related civil case are different than the victims in the present case. ECF No. 49 at 1–2. The Government relies, in part, on the spreadsheet attached to the Judgment as an addendum, which lists the restitution payees as "buyers[,]" to argue that the victims in the related civil case "were the individual pensioners[,]" and the victims in the present case "were the investors purchasing structured cash flows[.]" *Id.* at 1.

In response, Defendant contends that the Government alleged that she committed "committed crimes against both [b]uyers and [s]ellers." ECF No. 53 at 6. Defendant argues that the CFPB never claimed that the damages in the related case were solely to "buyer[s]" and only identified the victims as "consumers[,]" without providing more information. *Id.* Defendant also relies on various excerpts of the PSR, which specifically reference "pension holders." *Id.* at 3–5.

After careful consideration of the record, the arguments of the parties, and the applicable law, the Court denies the remaining portion of Defendant's Pro Se Motion to Make Certain Credits for Restitution Already Paid, to Determine Restitution and Forfeiture as Satisfied. Defendant argues that "affected consumers" as set forth in the Stipulated Final Judgment and Order in the related civil case are the same victims in the present case. ECF No. 43 at 2–3. In the Stipulated Final Judgment and Order, the CFPB was directed to deposit any funds received by it in satisfaction of the Judgment in the related civil case into a fund or funds whereby the fund could be used to provide "redress for injured consumers." *Bureau of Consumer Fin. Prot.*, C.A. No. 6:20-cv-00786-DCC, ECF

3

No. 52 at 7.  The Order defined "affected consumer[,]" in part, as "a consumer who entered into a contract related to their pension or disability income stream[.]"  *Id.* at 3.  While the PSR references pension holders in describing Defendant's conduct, *see* ECF No. 26 at 4, 7, 27, such references are part of the contextual description of the total scope of the fraudulent scheme and the identification of "victims" at both ends.  The Information that charged Defendant is clearly bringing criminal charges based on fraudulent conspiracy directed at "investors" and/or "buyers" rather than "pension holders" and "sellers."  *See* ECF No. 1 at 2–3 (stating that "[w]orking through a network of investment advisors and insurance agents, the [structured cash flow] businesses solicited investors (described as 'buyers') to purchase pension payments" and "[i]nvestors who had been induced to purchase structured cash flows based on active concealment and misrepresentation of material information are owed . . . [money]").  The Court acknowledges that the language in the PSR related to "victims" is potentially confusing.  However, the number sought for restitution matches up to "buyers" and is consistent with the language contained in the Information.  In fact, the total restitution ordered against Defendant is consistent with commissions on transactions with "buyers" as set out in the spreadsheet attached to the Judgment as an addendum.  *See* ECF No. 33-2.  Accordingly, the remaining portion of Defendant's Pro Se Motion to Make Certain Credits for Restitution Already Paid, to Determine Restitution and Forfeiture as Satisfied is denied.

## CONCLUSION

For the reasons set forth above, the remaining portion of Defendant's Pro Se Motion to Make Certain Credits for Restitution Already Paid, to Determine Restitution and

Forfeiture as Satisfied [43] is **DENIED**. To the extent Defendant requests a stay of restitution payments, such payments are held in abeyance pending receipt of a status report regarding funds in the trust account of the Upstate Law Group from the Government and an update from United States Probation regarding Defendant's current income and resources.

    IT IS SO ORDERED.

                                              s/ Donald C. Coggins, Jr.
                                              United States District Judge

June 10, 2024
Spartanburg, South Carolina